UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

TONGA NOLAN, ET AL.

VERSUS

EXXON MOBIL
CORPORATION, ET AL.

CIVIL ACTION

NUMBER 13-439-JJB-EWD

**RULING ON SECOND MOTION FOR LEAVE OF COURT TO FILE THIRD
SUPPLEMENTAL AND AMENDING COMPLAINT (REC. DOC. 167) AND MOTION
TO INTERVENE (REC. DOC. 166)**

Before the court is Plaintiffs' Second Motion for Leave of Court to File Third Supplemental and Amending Complaint (Rec. Doc. 167) and a Motion to Intervene (Rec. Doc. 166). Both motions are opposed (Rec. Docs. 180 & 182) and movants have filed Replies (Rec. Docs. 187-1 & 185). For the reasons set forth herein the Second Motion for Leave of Court to File Third Supplemental and Amending Complaint (Rec. Doc. 167) and the Motion to Intervene (Rec. Doc. 166) are <u>GRANTED</u>.

## I.    PROCEDURAL HISTORY

On or about June 13, 2013, Plaintiffs filed a Class Action Petition for Damages in state court. The action was subsequently removed to this court on the basis of 28 USC § 1332 and the Class Action Fairness Act ("CAFA"), 28 USC §§ 1332(d)(1)-(d)(10), 1453. (Rec. Doc. 1). Plaintiffs allege that the ExxonMobil Baton Rouge Facility (the "Facility") repeatedly failed to meet regulatory standards resulting in numerous leaks causing personal injury and property damage. (Rec. Doc. 81).

In their Second Restated and Superseding Class Action Complaint (Rec. Doc. 81, the "Second Restated Complaint"), Plaintiffs allege that ongoing releases and exposure to pollutants caused "frequent headaches, nausea, vomiting, chronic fatigue, skin rash and disease, eye and

throat irritation, memory loss, shortness of breath, chronic coughing, sinus issues, and other respiratory issues," "foul and offensive odors emanating from the Facility, resulting in nuisance and trespass," and property contamination   (Rec. Doc. 81, ¶¶ 31, 37 & 40).   In addition, Plaintiffs specifically allege that on June 14, 2012, the bleeder plug of Tank 801 at the Facility's Aromatics Production Unit began leaking steam cracked naptha, resulting in Plaintiffs and putative class members suffering health effects including but not limited to "headaches, nausea, vomiting, fatigue, and other respiratory issues" and causing injury to their property.  (Rec. Doc. 81, ¶¶ 10, 18 & 25).[1]  Plaintiffs also specifically allege that "during the week of May 22, 2013, as a result of Defendants' deferred maintenance of a combustor at the Facility's sulfur recovery unit" significant amounts of sulfur dioxide, hydrogen sulfide, and particulate matter "among other hazardous substances" were released.  (Rec. Doc. 81, ¶ 30).

In their Second Restated Complaint, Plaintiffs proposed to proceed on behalf of the following class:

> All persons who are residents, domiciliaries, and/or located in East Baton Rouge Parish, State of Louisiana, who have suffered damage to their persons and/or property from the ExxonMobil Facility located in East Baton Rouge Parish ("Facility"), the initial boundaries of which are reported as that area from the Facility to a two mile radius into the surrounding area.

> (Rec. Doc. 81, ¶ 44).

On November 17, 2014, Plaintiffs moved for class certification.  (Rec. Doc. 124).  In their Memorandum in Support of Class Certification, Plaintiffs asserted that between June 14, 2012 and April 15, 2014, "a total of 145 incidents were identified in which an operations failure led to a

---

[1] Per Plaintiffs' Second Restated Complaint, they "are making no claims regarding or based on any release or discharge from the Facility prior to June 12, 2012."   (Rec. Doc. 81, ¶ 43).

release of one or more contaminants to the air…." (Rec. Doc. 124-1, p. 4). In addition, Plaintiffs asserted that they had "thus far identified 3 unpermitted releases of particular interest": (1) the June 14, 2012 naptha leak; (2) a November 30, 2012 HC1 release; and (3) a May 23, 2013 sulfur dioxide leak. (Rec. Doc. 124-2, pp. 5-6).[2]

On May 13, 2015, the court denied Plaintiffs' Motion to Certify Class. (Rec. Doc. 159). While the court found that Plaintiff's proposed class met the numerosity, commonality, typicality, and adequacy requirements set out in Fed. R. Civ. P. 23(a)(1)-(4), class certification was denied based on Plaintiffs' failure to establish that common questions of law or fact predominated over individual questions of causation and damages. (Rec. Doc. 159, p. 13).

## A. The Third Supplemental and Amending Complaint

On the same day Plaintiffs' Motion to Certify Class was denied, Plaintiffs filed their first Motion for Leave of Court to File Third Supplemental and Amending Complaint. (Rec. Doc. 160). Plaintiffs' proposed Third Supplemental and Amending Complaint re-adopted and re-alleged "all allegations from the second supplemental and amended complaint as if copied *in extenso*." Additionally, the proposed Third Supplemental and Amending Complaint sought to add more than 100 new plaintiffs by simply amending paragraph 1 of the Second Restated Complaint to name them (by name and citizenship) as plaintiffs. (Rec. Doc. 160).

On June 5, 2015, the court denied Plaintiffs' Motion for Leave without prejudice,

---

[2] Plaintiffs argued in their Memorandum in Support of Class Certification that "[a]s a result on Exxon's ongoing and episodic emissions, Plaintiffs and putative class members suffer increased health risks and have suffered adverse exposure related health effects including frequent headaches, nausea, vomiting, chronic fatigue, skin rash and disease, eye and throat irritation, memory loss, shortness of breath, chronic coughing, sinus issues, and other respiratory issues. They are also regularly subjected to noxious odors emanating from the Facility. The nuisance created by Exxon's Facility prevents Plaintiffs and putative class members from the full use and enjoyment of their homes." (Rec. Doc. 124-1, p. 7).

explaining that "because class certification was denied, all claims now proceed as individual claims. But neither the existing plaintiffs nor the proposed new plaintiffs make any specific allegations as to which release(s) they were exposed." (Rec. Doc. 162, p. 2). As the court explained, "the proposed amended complaint simply lumps all plaintiffs together as to all alleged releases. Allowing this would mean the factual basis for each individual plaintiff's claims would have to be determined through discovery – which will likely be protracted and contentious – rather than by pleading facts in the complaint." (Rec. Doc. 162, p. 3). Rather than permitting Plaintiffs' proposed amendment, the court reasoned that "the better course is to have the plaintiffs make specific exposure allegations as to each plaintiff….". (Rec. Doc. 162, p. 4). Accordingly, the court denied Plaintiffs' Motion for Leave "without prejudice to the plaintiffs moving for leave to join additional plaintiffs and to amend the complaint to include specific factual allegations as to each plaintiff's exposure to a particular release, and which proposed amended complaint does not simply adopt and re-allege the existing class allegations from the Second Restated and Superseding Class Action Complaint." (Rec. Doc. 162, p. 5).

On September 11, 2015, Plaintiffs filed a Second Motion for Leave of Court to File Third Supplemental and Amending Complaint. (Rec. Doc. 167).[3] Defendants responded to Plaintiffs' Second Motion for Leave to File the Third Supplemental and Amending Complaint by arguing that: (1) Plaintiffs' "exposure allegations remain threadbare" such that Plaintiffs' failure to comply with the court's instructions regarding amendment should result in dismissal (Rec. Doc. 180, p.

---

[3] In addition to naming the proposed individual plaintiffs, the proposed Third Supplemental and Amending Complaint amends the "Areas of Concern" to be "the communities surrounding" the Facility (as opposed to the original definition setting the initial boundaries of the area to the two-mile radius surrounding the Facility, *see* Rec. Doc. 81, ¶ 6) and "withdraw[s] all class allegations." (Rec. Doc. 167-1, II & III). Defendants do not raise any concerns regarding these aspects of the proposed pleading.

1); and (2) in the event the court allows Plaintiffs' proposed amendment, it should do so subject to a *Lone Pine* order "requiring evidence of exposure, injury, and causation and 'just terms' necessary to remedy undue prejudice to Exxon, including severance of any remaining individual cases for trial following consolidated discovery." (Rec. Doc. 180, p. 2).[4]   In response, Plaintiffs assert that the proposed Third Supplemental and Amending Complaint is sufficiently specific, and oppose the entry of a *Lone Pine* order.   (Rec. Doc. 187-1).

### B. The Motion to Intervene

On September 8, 2015, a Motion to Intervene was filed by 20 proposed intervenors.   (Rec. Doc. 166).   Proposed intervenors assert that they "would have been members of the class for which certification was denied" and allege they were "employees of the Entergy LA Station who were exposed on or about June 14-15, 2012." (Rec. Doc. 166, ¶ 3 & Rec. Doc. 169-3, ¶ 1).[5] Proposed intervenors assert that they may intervene of right in the current proceedings pursuant to Fed. R. Civ. P. 24(a).   Alternatively, proposed intervenors assert that this court should permit their intervention pursuant to Fed. R. Civ. P. 24(b).   Although proposed intervenors assert that intervention is authorized pursuant to either Fed. R. Civ. P. 24(a) or (b), they do not discuss

---

[4] As outlined more fully below, Defendants argue that this court should order each plaintiff to provide sworn expert affidavits establishing a prima facie showing of personal injury and/or property damage, and assert that the order should protect Defendants from prejudice by consolidating the case only through completion of fact and expert discovery, Daubert motions, and multi-plaintiff dispositive motions.   (Rec. Doc. 180, pp. 7-8 & 9).

[5] The Intervention Complaint alleges that the proposed intervenors were employees of the Entergy LA Station who were exposed "on or about June 14-15, 2012." (Rec. Doc. 169-3, ¶ 1).   Despite this allegation – which seems to indicate would-be intervenors are alleging only exposure stemming from the June 14, 2012 naptha release – proposed intervenors also include factual allegations regarding the May 23, 2013 sulfur release (*see* Rec. Doc. 169-3, ¶ 31) and assert that the basis of certain of their claims are the June 14, 2012 and May 22, 2013 incidents and the ongoing release.   (Rec. Doc. 169-3, ¶¶ 48, 52-57).   In any event, the proposed Intervention Complaint makes clear that proposed intervenors are alleging injuries stemming from releases at the Facility previously put at issue by the original plaintiffs.   Further, proposed intervenors' briefing in support of the Motion to Intervene asserts in response to Defendants' concerns regarding the lack of specifically alleged dates of exposure that "the Intervention Complaint does provide specific dates, which are June 14-15." (Rec. Doc. 185, p. 2).

applicability of either subsection in their original Memorandum in Support.   Instead, proposed intervenors focus on Fed. R. Civ. P. 15(c)(1), which addresses when an amended pleading is deemed to relate back to the date of the original pleading.   (Rec. Doc. 166-2).   In a supplemental memorandum in support of the motion to intervene, proposed intervenors assert that this court retains jurisdiction under CAFA[6] and provide some argument that intervention of right pursuant to Fed. R. Civ. P. 24(a) is warranted.   (Rec. Doc. 174).[7]

Defendants do not set forth any objections to or even discuss the potential applicability of Fed. R. Civ. P. 24 in response to the Motion to Intervene.   Instead, Defendants assert that, like the current Plaintiffs' Third Supplemental and Amending Complaint, the Intervention Complaint fails to make specific factual allegations about each claimants' exposure to a particular release and therefore the Motion to Intervene should be denied.   (Rec. Doc. 182, p. 2).   Alternatively,

---

[6] CAFA provides original jurisdiction, determined at the time of removal.   *Louisiana v. American Nat. Property Cas. Co.*, 746 F.3d 633, 639 (5th Cir. 2014) (explaining that CAFA "defines class action as any civil action *filed* under Rule 23 or a state class action statute.   Thus, federal jurisdiction under the statutory provision of CAFA is explicitly concerned with the status of an action when it is filed – not how it subsequently evolves.").   *See also, Rivers v. Chalmette Medical Center, Inc.*, 805 F.Supp.2d 291, 295 (E.D. La. 2011) (denying motion to remand and explaining that "denying class certification had no effect at all on the facts as they existed at the time of removal and the Court continues to have jurisdiction over this case.")   Accordingly, despite the denial of class certification, this court continues to have subject matter jurisdiction pursuant to 28 USC § 1332(d)(1)-(10).

[7] Proposed intervenors' original Intervention Complaint named non-diverse individual defendants this court had previously dismissed.   (Rec. Doc. 76 [Stipulation for Dismissal]; Rec. Doc. 82 [Order dismissing without prejudice defendants Reese, Stratford, Leinweber, and Wong]).   The dismissal left only the diverse Exxon defendants, and no lingering question about diversity jurisdiction under § 1332(a).   Accordingly, the court requested proposed intervenors submit a supplemental memorandum addressing: (1) whether Rule 24 permits the proposed intervenors to simultaneously move to intervene as plaintiffs and move to join defendants; (2) whether joining Reese, Stratford, Leinweber, and Wong as defendants would divest the court of subject matter jurisdiction under § 1332(a); (3) whether joining Reese, Stratford, Leinweber, and Wong as defendants would divest the court of subject matter jurisdiction under CAFA; and (4) whether joining the proposed intervenors as plaintiffs under Rule 24 "would be inconsistent with the jurisdictional requirements of section 1332" and therefore barred by § 1367(b).   (Rec. Doc. 168, pp. 3-4).   Following the court's order, proposed intervenors filed a motion to substitute the original Intervention Complaint with a complaint that did not name the non-diverse individual defendants.   In granting the motion to substitute, the court instructed proposed intervenors that they no longer needed to file a supplemental memorandum addressing subjects (1)-(3) but a supplemental memorandum addressing subject (4) was still required. (Rec. Doc. 170).

Defendants again assert that in the event this court allows the intervention, it should do so subject to a *Lone Pine* order.  (Rec. Doc. 182, p. 2).  In response, proposed intervenors assert that the Intervention Complaint is sufficiently specific and that Defendants have not met their burden of establishing that this case is appropriate for a *Lone Pine* order.   (Rec. Doc. 185).

## II.   ANALYSIS

### A. Sufficiency of the Proposed Third Supplemental and Amending Complaint and Proposed Intervention Complaint

Fed. R. Civ. P. 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  "Pursuant to Rule 8(a), a complaint will be deemed inadequate only if it fails to (1) provide notice of the circumstances which give rise to the claim, or (2) set forth sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist."  *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999). *See also*, *Cashman Equipment Corp. v. Rozel Operating Co.*, 2010 WL 3385117, at *4 (M.D. La. April 30, 2010) (same).  A complaint "which contains a 'bare bones' allegation that a wrong occurred and which does not plead any of the facts giving rise to the injury, does not provide adequate notice."  *Id*.  As discussed above, this court previously denied Plaintiffs' motion to file a Third Supplemental and Amending Complaint following denial of class certification and instructed Plaintiffs that they could move for leave to join additional plaintiffs and amend the complaint to "include specific factual allegations as to each plaintiff's exposure to a particular release…."  (Rec. Doc. 162, p. 5).

In the currently-proposed Third Supplemental and Amending Complaint, Plaintiffs name 257 plaintiffs (including current plaintiffs).  (Rec. Doc. 167-1).  For each named plaintiff, the proposed pleading provides the time period/dates that the Plaintiff was in the vicinity of the

Facility;[8] states whether the named plaintiff was present for the June 14, 2013, November 30, 2012, and/or May 23, 2013 releases; and lists the named plaintiff's alleged symptoms.[9] In the proposed Intervention Complaint, proposed intervenors specifically allege they were exposed "on or about June 14-15, 2012," where they were working on the date of the alleged incident, and the specific physical symptoms they allegedly experienced. (Rec. Doc. 169-3).[10]

Despite Defendants' assertion that Plaintiffs' and proposed intervenors' exposure allegations "remain threadbare," the court finds that the proposed Supplemental and Amending Complaint and proposed Intervention Complaint comply with this court's previous instruction to include specific allegations regarding each plaintiffs' exposure to a particular release, and provides Defendants with sufficient notice to outline each plaintiff's claim.

### B. Intervention Pursuant to Fed. R. Civ. P. 24

"Intervention is intended to prevent multiple lawsuits if common questions or law or fact are involved. It is not, however, intended to allow entirely new lawsuits by intervenors." *Stewart v. City of Houston*, 2009 WL 783319, at *3 (March 24, 2009) (citing *Deus v. Allstate Ins.*

---

[8] The majority of the proposed plaintiffs reside in the two-mile radius surrounding the Facility. However, at least one proposed plaintiff, Carles Rowley, is alleged to have worked as a meter reader in the area approximately .72 miles to the east of the Facility. (Rec. Doc. 167-1, p. 27). Similarly, proposed plaintiff Joseph B. Eaglin is alleged to have "frequently visited" a home in the vicinity of the Facility. (Rec. Doc. 167-1, p. 21). Proposed plaintiffs Cherry Hilton, J.R., C.R., C.H., C.H., F.H., and Diondra Rhymes are alleged to have been "present at a party" in the vicinity of the Facility on June 14, 2012. (Rec. Doc. 167-1, p. 49). While almost all of the proposed plaintiffs allege with specificity the distance of their home from the Facility, proposed plaintiffs Rosie Stevens and Calvin Stevens, Sr. simply allege they own a home "located to the north of Exxon's facility" without specifying that the home is within the two-mile radius surrounding the Facility. (Rec. Doc. 167-1, p. 30).

[9] The vast majority of the proposed plaintiffs allege specific "nuisance irritation effects" such as sinus issues, eye irritation, nausea, rashes, headaches, coughing, etc. However, a few of the proposed plaintiffs simply allege they "regularly suffered noxious odors, as well as persistent irritation effects" or "nuisance exposure symptoms" without further detail. (Rec. Doc. 167-1, pp. 9, 21, 27, 31, 33, 42).

[10] Certain of the proposed intervenors also state specific treatment providers. For example, Rebecca Anderson alleges she was "treated at Lake After Hours on Coursey Blvd, Baton Rouge, LA." Sylvester Tilley alleges he was "treated at Baton Rouge General where he was hospitalized for a couple of days." (Rec. Doc. 169-3).

*Co.*, 15 F.3d 506, 525 (5th Cir. 1994)).   "It is well established that an intervention should generally be granted if no one would be prejudiced and if greater justice would be achieved."   *Stewart v. City of Houston*, 2009 WL 783319, at *3 (March 24, 2009) (citing *Ross v. Marshall*, 426 F.3d 745, 753 (5th Cir. 2005) ("Intervention should generally be allowed where 'no one would be hurt and greater justice could be attained.'")).   As noted above, Defendants' response to the Motion to Intervene is two-fold: (1) that the allegations set forth in the proposed Intervention Complaint are deficient; and (2) that this court – if inclined to grant the intervention – should do so in conjunction with entry of a *Lone Pine* order.   (Rec. Doc. 182).   Accordingly, while Defendants do not present any direct response to the proposed-intervenors' ability to intervene pursuant to Fed. R. Civ. P. 24, the court considers the applicability of those requirements below.

### 1. Timeliness of the Motion to Intervene

"Whether leave to intervene is sought under section (a) or (b) of Rule 24, the application must be timely."   *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263 (5th Cir. 1977).   The timeliness of a motion to intervene is a matter committed to the sound discretion of the trial court.   *McDonald v. E.J. Lavino*, 430 F.2d 1065, 1071 (5th Cir. 1970).   Timeliness "is not limited to chronological considerations but 'is to be determined from all the circumstances.'"   *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263 (5th Cir. 1977).   The Fifth Circuit has set forth four factors to consider when evaluating whether a motion to intervene is timely: (1) the length of time during which the proposed intervenor should have known of his interest in the case before he petitioned to intervene; (2) the extent of prejudice that those parties already in the litigation would suffer "as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case;" (3) the extent of prejudice to the

proposed intervenor if he is not allowed to intervene; and (4) the existence of "unusual circumstances militating either for or against a determination that the application is timely." *Ross v. Marshall*, 426 F.3d 745, 754 (5th Cir. 2005) (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-266 (5th Cir. 1977)). While the above factors "give structure" to the timeliness analysis, the analysis "remains 'contextual' and should not be used as a 'tool of retribution to punish the tardy would-be intervenor, but rather [should serve as] a guard against prejudicing the original parties by the failure to apply sooner.'" *Ross v. Marshall*, 426 F.3d 745, 754 (5th Cir. 2005) (citing *Sierra Club v. Epsy*, 18 F.3d 1202, 1205 (5th Cir. 1994)).

Proposed intervenors assert that they moved to intervene "shortly after certification was denied" and point out that this court did not "require that a notice issue of the denial of class certification." (Rec. Doc. 174). Proposed intervenors assert that they "would have been members of the class for which certification was denied," and Defendants have not disputed that claim. (Rec. Doc. 166-2 & Rec. Doc. 182). As outlined above, this court denied class certification on May 13, 2015 and proposed intervenors filed their Motion to Intervene on September 8, 2015. Until denial of class certification, proposed intervenors had no reason to believe their rights would not be protected via the proposed class action. Moreover, given the relatively recent denial of class certification, and the recent efforts by plaintiffs to amend the operative complaint to name additional plaintiffs, the court fails to see how the parties already in the suit would be prejudiced by the timing of this intervention. Further, given the fact that would-be intervenors allege they would have been part of the proposed class, and their claims arise out of an alleged release already at issue in this suit, there is the distinct possibility that proposed intervenors would be prejudiced if not allowed to intervene here. Finally, the court sees no (and

10

Defendants have not pointed out) circumstances militating against a determination that this intervention is timely. Accordingly, given the current procedural posture of this matter (especially in light of the recent denial of class certification and current Plaintiffs' pending Third Supplemental and Amending Complaint), the court finds that this intervention should be considered timely pursuant to Fed. R. Civ. P. 24(a) or (b).

However, in addition to the timeliness factors set forth above, the court is faced with a situation in which it appears that the proposed-intervenors' claims are time-barred. As recognized by the Fifth Circuit, "the filing of the motion for intervention, and not the later approval of the motion and actual filing of the complaint, determines the commencement of the action for purposes of the statute of limitations. *U.S. for the use and benefit of Canion v. Randall & Blake*, 817 F.2d 1188, 1192 (5th Cir. 1987). The law is clear that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *American Pipe and Construction Co. v. Utah*, 414 US 538, 554 (1974). "Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action." *Crown, Cork & Seal Co., Inc. v. Parker*, 462 US 345, 354 (1983). *See also*, *Taylor v. United Parcel Service, Inc.*, 554 F.3d 510, 519 (5th Cir. 2008) ("if the district court denies class certification under Rule 23, tolling of the statute of limitations ends.").

Pursuant to these precepts, proposed intervenors had one year from the alleged June 14, 2012 naptha release to bring their tort claims.[11] Plaintiffs filed their state court suit on June 13,

---

[11] *See*, La. CC article 3492 ("Delictual actions are subject to a liberative prescription period of one year. This

2013 – one day before expiration of the limitations period.  Pursuant to *American Pipe*, the limitation period was tolled until May 13, 2015, the date class certification was denied. Accordingly, it appears that proposed intervenors complaint is time-barred.[12]

Recognizing this issue, proposed intervenors assert that pursuant to Fed. R. Civ. P. 15(c)(1), the Intervention Complaint "relates back" to plaintiffs' original filing.  (Rec. Doc. 166-2).[13]  Several courts outside the Fifth Circuit "have held that a complaint-in-intervention filed under Rule 24 may relate back to the date of an earlier complaint, provided there is no prejudice to the defendant."  *U.S. ex rel. Wilkins v. North American Constr. Corp.*, 2001 WL 34109383, at *13 (S.D. Tex. Sept. 26, 2001) (citing *Cummings v. U.S.*, 704 F.2d 437, 439-40) (9th Cir. 1983); *Ross v. Patrusky, Mintz & Semel*, 1997 WL 214957, at *8 (S.D.N.Y. April 29, 1997)).  *See also*, *ACORN v. County of Nassau*, 270 F.R.D. 123, 125 (E.D.N.Y. 2010) ("Rule 24 does not explicitly provide that an intervenor's claim may relate back to the case's original complaint for purposes of

---

prescription commences to run from the day the injury or damage is sustained….").

[12]  The court is aware of Fifth Circuit cases which indicate that intervention to assert a time-barred claim is not allowed. However, these cases do not discuss the potential applicability of the relation back doctrine.  *See*, *Atkins v. General Motors Corp.*, 701 F.2d 1124, n. 5 (5th Cir. 1983) (stating that district court's refusal to allow intervention of plaintiffs whose claims were barred by statute of limitations was proper).  Moreover, the cases are distinguishable to the extent they deal with claims extinguished by a statute of repose (as opposed to barred by the statute of limitations) or a strictly construed limitation period.  *See*, *Hall v. Variable Annuity Life Ins.*, 727 F.3d 372, 377 (5th Cir. 2013) (finding that once class certification was vacated, tolling of the statute of repose ceased and putative class members who brought action after the statute of repose expired could not intervene); *Crowley Maritime Corp. v. Panama Canal Com'n*, 849 F.2d 951 (5th Cir. 1988) (denying intervention based on expiration of limitation period established by Congress in the Panama Canal Act).

[13]  Fed. R. Civ. P. 15(c)(1)(C) provides that an amendment to a pleading relates back to the date of the original pleading when "the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(B) requires that the "amendment assert[] a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading."

the statute of limitations.   However, courts in this circuit have generally interpreted Rule 24 to provide for relation back when '(1)...there is a 'community of interest' between the proposed intervenor's and plaintiff's claims; (2) intervenor's motion is timely within the meaning of Rule 24; and (3) no prejudice to the defendant would result.'" (internal citations omitted)); *Weber v. Mobil Oil Corp.*, 506 F.3d 1311, 1315 (10th Cir. 2007) (explaining that while some jurisdictions will not allow an intervening plaintiff to "piggyback" on the claims of an earlier plaintiff to escape the statutory bar, that rationale does not apply where defendants "are not subject to new liabilities by way of the intervening plaintiffs because the new plaintiffs all appear to fall within the original class definition and because they do not assert any additional claims" against defendants).   While the Fifth Circuit has not addressed the issue, at least one district court has applied the doctrine to a proposed intervention.   *U.S. ex rel. Wilkins v. North American Constr. Corp.*, 2001 WL 34109383, at *13 (S.D. Tex. Sept. 26, 2001) (declining to relate back government's intervention complaint where "[t]he prerequisite to the relation back doctrine, notice to the defendant, was not satisfied...").   Although the proposed intervenors do not provide, and this court has been unable to locate, Fifth Circuit precedent applying the relation back doctrine to intervention complaints, the court finds that the doctrine may apply here – where proposed intervenors were presumably members of the putative class against whom Defendants were already defending claims.

"The doctrine of relation back under Rule 15(c) is liberally applied...especially if no disadvantage will accrue to the opposing party." *Williams v. U.S.*, 405 F.2d 234, 236 (5th Cir. 1968).   Although Rule 15(c) "does not address the relation back of amendments that propose to add or substitute plaintiffs, the Fifth Circuit has looked to Rule 15(c) when faced with such situations.   *In re Mike's, Inc.*, 2002 WL 1767425, at *2 (E.D. La. July 30, 2002) (citing *Summit*

*Office Park v. United States Steel Corp.*, 639 F.2d 1278, 1282 (5th Cir. 1981); *Williams*, 405 F.2d at 236). The Fifth Circuit has instructed that "notice is the critical element involved in Rule 15(c) determinations." *Williams v. U.S.*, 405 F.2d 234, 236 (5th Cir. 1968). While a fair notice determination may generally focus on whether a new claim arises out of the same conduct, transaction, or occurrence, "when it comes to a late effort to introduce a new party, something else is added. Not only must the adversary have had fair notice about the operational facts, but it must have had fair notice that a legal claim existed in and was in effect being asserted by, the party belated brought in." *Id*. at 238. *See also*, *Pappion v. Dow Chemical Co.*, 627 F.Supp. 1576, 1581 (W.D. La. 1986) (refusing to allow time-barred claim of new plaintiff to relate back and explaining that in order to relate back, "the additional plaintiff must have in some manner already been involved in the action, so that the defendant was on notice that it was in effect already defending the action against the new plaintiff who seeks to be added by the late amendment.").

To the extent proposed intervenors seek to be added as party plaintiffs in this matter, and in light of their unopposed allegation that they would have been members of the class for which certification was denied, the court finds that Defendants had fair notice that the proposed intervenors were already involved in the action and that Defendants were "in effect already defending the action" against these proposed intervenors. Accordingly, because proposed intervenors are part of what would have been the class had it been certified (*i.e.*, there is an identity of interest between the intervenors and the current plaintiffs), the proposed intervenors' claims arise out of the same conduct, transaction or occurrence that is already at issue in this suit (the alleged June 14, 2012 release), and because Defendants had notice of these potential claims such that they will not be prejudiced by the intervention, the court finds that the claims set forth in the

14

Intervention Complaint relate back to Plaintiffs' original filing pursuant to Fed. R. Civ. P. 15(c).[14]

### 2. Intervention of Right

Pursuant to Fed. R. Civ. 24(a), a party is entitled to intervene in a pending lawsuit when: (1) the motion to intervene is timely; (2) the potential intervenor asserts an interest that is related to the property or transaction that is the subject of the action in which he seeks to intervene; (3) the potential intervenor is so situated that disposition of the case may as a practical matter impair or impede his ability to protect his interest; and (4) the parties already in the action do not adequately protect the potential intervenor's interest. *Ford v. City of Huntsville*, 242 F.3d 235, 239 (5th Cir. 2001).

"A potential intervenor asserts an interest that is related to the property or transaction that forms the basis of the controversy in the case into which she seeks to intervene, if the potential intervenor has a 'direct, substantial, [and] legally protectable' interest in the property or transaction…." *John Doe No. 1. V. Glickman*, 256 F.3d 371, 379 (5th Cir. 2001) (citing *Sierra Club v. Epsy*, 18 F.3d 1202, 1207 (5th Cir. 1994) & *Edwards v. City of Houston*, 78 F.3d 983, 1004 (5th Cir. 1996)). When considering this factor, the Fifth Circuit has cautioned against defining "property or transaction" too narrowly. *See*, *Ford v. City of Huntsville*, 242 F.3d 235,

---

[14] This result is in keeping with the underlying purpose of limitation periods to ensure a defendant is put on timely notice of the need to defend a claim. *See*, *American Pipe and Construction Co. v. Utah*, 414 US 538, 554-55 (1974) (explaining that limitation periods are designed to "'promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared….The policies of ensuring essential fairness to defendants and of barring a plaintiff who 'has slept on his rights,' are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." (internal citations omitted)); *Crown, Cork & Seal Co., Inc. v. Parker*, 462 US 345, 353 (1983) (explaining that based on the class complaint a defendant "will be aware of the need to preserve evidence and witnesses respecting the claims of all the members of the class.").

240 (5th Cir. 2001); *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1203 (5th Cir. 1992).   The "interest test" is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."   *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994).

Here, proposed intervenors assert that they were exposed on or about June 14-15, 2012 to fumes from the June 14, 2012 naptha release.[15]   Because the proposed intervenors raise claims arising out of an alleged release that was already at issue in the case, the court finds that intervenors have asserted an interest related to the property or transaction that forms the basis of the controversy.

Likewise, "[w]hether a would-be intervenor is able to protect his interests outside the underlying suit is…governed by a liberal, practical standard."   *Stewart v. City of Houston*, 2009 WL 783319, at *3 (March 24, 2009) (citing *Edwards v. City of Houston*, 78 F.3d 983, 1004-1005 (5th Cir. 1996)).   Here, the proposed intervenors' assert that "[t]he Seventh Amendment may prohibit trying liability multiple times to different juries."   (Rec. Doc. 174).   While not entirely clear from proposed intervenors' memorandum in support, it appears proposed intervenors are attempting to raise a concern regarding potential bifurcation of the liability and damage phases of this suit.   The court recognizes that "[t]he Seventh Amendment does not prohibit bifurcation of trials as long as the 'the judge [does] not divide issues between separate trials in such a way that the same issue is reexamined by different juries.'"   *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 628 (5th Cir. 1999).   However, a fair reading of proposed intervenor's briefing in this

---

[15] As noted above, the proposed Intervention Complaint also references the alleged May 23, 2013 release.   *See*, n. 5, *supra*.

regard does not provide any basis for finding a risk of infringing upon their Seventh Amendment rights, and this court is hesitant to base its decision on such a nebulous and unarticulated concern. However, setting this issue aside, the court recognizes that a proposed intervenor's interest may in some circumstances be impaired by adverse *stare decisis* effects. *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994). Given the fact that proposed intervenors assert they would have been part of the class had it been certified, as well as the fact that their proposed complaint alleges claims arising from an alleged release already at issue in this suit, the court finds that there is a risk that the proposed intervenors would be unable to protect their interests outside of this suit.

Finally, the proposed intervenors have the "minimal" burden of demonstrating that their interest will be "inadequately represented by the existing parties to the suit." *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994). "The applicant need only show that representation 'may' be inadequate." *Id*. Although the proposed intervenors raise claims based on the same factual allegations already set forth in the suit, they do so in the hopes of recovering individual damages. Accordingly, the court finds this weighs in favor of intervention. *See, Stewart v. City of Houston*, 2009 WL 783319, at *5 (March 24, 2009) ("This case is not a class action and Plaintiffs have filed suit to secure their own damages. The court is persuaded that [proposed intervenor's] interest is not adequately represented by the current parties.").

Because the court finds the proposed intervention was timely filed and that the requirements of Fed. R. Civ. P. 24(a) are satisfied, proposed intervenors are permitted to intervene into this action by right.[16]

---

[16] Because the court finds proposed intervenors have satisfied the requirements of Fed. R. Civ. P. 24(a), the court does not need to engage in an exhaustive analysis of permissive intervention pursuant to Fed. R. Civ. P. 24(b). However, the court notes that the same issues of timeliness, lack of prejudice to the parties in the suit, and common questions of

### C. **Request for Entry of a *Lone Pine* Order**

Defendants assert that motions for leave to file the Third Supplemental and Amending Complaint and to intervene should be granted only if accompanied by a *Lone Pine* order. (Rec. Docs. 180 & 182).[17]   Specifically, Defendants argue that this court should enter an order requiring each plaintiff to provide sworn affidavits to make a prima facie showing in support of their claims. With regard to personal injury claims, Defendants assert that a plaintiff's affidavit should set forth: (1) the identity, exposure date, and exposure dosage for each chemical to which plaintiff was exposed; (2) the precise disease or illness from which the plaintiff suffers; (3) evidence supporting the contention that exposure to Exxon's emissions caused the injury in question; and (4) the underlying facts or data relied on in forming an opinion that exposure to the alleged chemical(s) at the alleged level or dose was sufficient to cause the alleged injury or illness. (Rec. Doc. 180, pp. 7-8; Rec. Doc. 182, p. 7). With regard to property damage claims, Defendants assert that a plaintiff's affidavit should set forth: (1) that the plaintiff's property and the alleged migration pathway have been sampled by a scientifically reliable method; (2) the samples have been analyzed by a qualified laboratory; (3) lab analysis detected constituents consistent with emissions from the Exxon facility; (4) lab analysis confirmed the existence of a migration pathway between the site and the property; and (5) reports from real estate experts supporting diminution of property value claims. (Rec. Doc. 180, p. 8). Both current Plaintiffs and proposed intervenors oppose the entry

---

fact and law would lead the court to exercise its discretion in this instance to allow permissive intervention. *See*, *SEC v. Stanford Intern. Bank, Ltd.*, 429 Fed. Appx. 379, 382 (5th Cir. 2011) ("[a] court may allow permissive intervention if the movant can demonstrate that it 'has a claim or defense that shares with the main action a common question of law or fact' and that it will not 'unduly delay or prejudice the adjudication of the original parties' rights.'").

[17] This name comes from *Lore v. Lone Pine Corp.*, 1986 WL 637507 (N.J. Super., Nov. 18, 1986). There, the court approved a pre-trial order which required plaintiffs (who had instituted suit against some 464 defendant landfill operators) to provide some basic facts in the form of expert affidavits or run the risk of having their case dismissed.

of a *Lone Pine* Order.   (Rec. Docs. 185 & 187-1).

"*Lone Pine* orders are designed to handle the complex issues and potential burdens on defendants and the court in mass tort litigation.    In the federal courts, such orders are issued under the wide discretion afforded district judges over the management of discovery under Fed. R. Civ. P. 16." *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).   In *Acuna*, the Fifth Circuit affirmed entry of a *Lone Pine* order where "approximately one thousand six hundred plaintiffs" sued "over one hundred defendants for a range of injuries occurring over a span of up to forty years." *Id*.   The court explained that "[n]either the defendants nor the court was on notice from plaintiffs' pleadings as to how many instance of which diseases were being claimed as injuries or which facilities were alleged to have caused those injuries." *Id*.   Accordingly, the district court required each plaintiff provide an expert affidavit specifying "the injuries or illnesses suffered by the plaintiff that were caused by the alleged uranium exposure, the materials or substances causing the injury and the facility though to be their source, the dates or circumstances and means of exposure to the injurious materials, and the scientific and medical bases for the expert's opinion." *Id*. at 338.   Following *Acuna*, other courts in this circuit have entered similar case management orders.   *See*, *In re Vioxx Products Liability Litigation*, 557 F.Supp.2d 741 (E.D. La. 2008) (granting entry of *Lone Pine* order at late stage of MDL litigation);   *In re 1994 Exxon Chemical Plant Fire Litigation*, 2005 WL 6252312 (M.D. La. April 7, 2005) (granting *Lone Pine* order in consolidated toxic tort suit where state court petitions "did not identify the particular injury, illness, loss or harm sustained by each individual named," "did not identify which contaminant caused which injury or damage," and instead "broadly alleged that substances were released, they were exposed to the substances, and they were injured or otherwise suffered

damages from the exposure.").

In determining the appropriateness of issuing a *Lone Pine* order, courts may consider several factors: "including: (1) the posture of the action; (2) the peculiar case management needs presented; (3) external agency decisions impacting the merits of the case; (4) the availability and use of other procedures explicitly sanctioned by federal rule or statute; and (5) the type of injury alleged by plaintiffs and its cause." *Smith v. Atrium Medical Corp.*, 2014 WL 5364823, at *1 (E.D. La. Oct. 21, 2014) (citing *In re Digitek Product Liability Litigation*, 264 F.R.D. 249, 256 (S.D. W. Va. 2010)). Defendants assert that a *Lone Pine* order is appropriate here because Plaintiffs' exposure allegations are conclusory such that "distinguishing potentially plausible claims from frivolous ones will require extensive and burdensome discovery – including depositions of hundreds of plaintiffs and healthcare providers" and argue that because some discovery has already taken place in the context of attempted class certification, "requiring Plaintiffs to produce prima facie evidence of exposure, injury and causation before further discovery commences will not prejudice Plaintiffs because they have already conducted extensive discovery regarding Exxon's Baton Rouge operations." (Rec. Doc. 180, p. 5).

In response, Plaintiffs assert that the allegations as set forth in the Third Supplemental and Amending Complaint, as well as the discovery related to class certification, are sufficient to put Defendants on notice of each plaintiff's claims. (Rec. Doc. 187-1, pp. 1-2). Further, Plaintiffs assert that they have already put forth evidence establishing a prima facie case, and cite the testimony and expert reports of Dr. Sawyer and Mr. Auberle. (Rec. Doc. 187-1, p. 2). [18]

---

[18] At the hearing on class certification, Plaintiffs' experts focused on hydrogen sulfide, and asserted that they compared models of exposure to a particular study indicating at what level exposure to hydrogen sulfide could produce effects for most individuals, also known as its "odor threshold." According to Mr. Auberle, the modeling data

Plaintiffs further argue that analysis of the *Digitek* factors weighs against entry of a *Lone Pine* order.  (Rec. Doc. 187-1, pp. 5-9).[19]

This court agrees with Plaintiffs that entry of a *Lone Pine* order is an "extraordinary procedure" that should be used "where existing procedural devices explicitly at the disposal of the parties by statute and federal rule have been exhausted or where they cannot accommodate the unique issues of this litigation."  *In re Digitek Product Liability Litigation*, 264 F.R.D. 249, 259 (S.D. W. Va. 2010).  *See also*, *Simeone v. Girard City Bd. Of Edn.*, 872 N.E.2d 344, 352 (Ohio Ct. App. 2007) ("In most of the Lone Pine cases we have reviewed…the Lone Pine order was issued only after one party was refusing to comply with discovery requests or when the plaintiffs failed to set forth a prima facie claim.").  Here, while Defendants may disagree with Plaintiffs' expert's current assertions regarding general causation, level of exposure, or migration pathways, the court finds such generalized evidence, especially in light of the more particularized allegations set forth in the Third Supplemental and Amending Complaint, fairly give Defendants notice of Plaintiffs' particularized claims.  Moreover, given that class certification was recently denied, the court does not find that this suit is in a procedural posture warranting an extreme remedy such as

---

accounted for other factors, such as terrain and atmospheric conditions – though he did acknowledge that he did not account for other possible sources of the chemicals, he still claimed that at least 80% came from Exxon.  These exposure levels, according to Plaintiffs, are also sufficient to invoke nuisance issues, such as offensive odors, within the area.

[19] Specifically, Plaintiffs point out that discovery to date has been focused on class certification; therefore, Plaintiffs need to conduct additional discovery to determine the full extent of emissions and Plaintiffs' exposure.  Plaintiffs argue that this is not an exceptionally large or overly complex mass tort case, and point to World Health Studies relied upon by Dr. Sawyer in support of his general causation analysis.  Plaintiffs assert that the established discovery rules have not been shown to be inadequate here and that in any event, Plaintiffs' non-health nuisance claims (about which Plaintiffs assert their claims are primarily focused) do not require medical expert testimony or proof of formal medical treatment such that requiring "individualized expert affidavits, especially at this early stage, is excessive and unwarranted." (Rec. Doc. 187-1, pp. 5-9).  Plaintiffs argue that the level of detail Exxon is requesting would be impossible to provide because "the day to day emissions data that would be required either does not exist or has not been produced." (Rec. Doc. 187-1, pp. 9-10).

a *Lone Pine* order.  While the court recognizes the potential logistical difficulties inherent in utilizing traditional discovery methods in a case involving over 200 plaintiffs, Defendants have not shown that such methods have been exhausted or cannot accommodate the parties' needs.[20]

### D.  Trial Management Plan

In addition to a *Lone Pine* order, Defendants assert that: (1) the case should remain consolidated only through completion of fact and expert discovery, *Daubert* motions, and multi-plaintiff dispositive motions; (2) following the close of discovery and ruling on Daubert or multi-plaintiff dispositive motions, each remaining plaintiff's (or household's) claims shall be severed for any remaining individual pretrial proceedings, motions practice, and individual trial before a separate jury; and (3) at trial, each plaintiff shall bear the burden of production and proof, using admissible evidence, on each element of each cause of action pursued.  (Rec. Doc. 180, p. 9; Rec. Doc. 182, p. 9).  Plaintiffs do not spend much time addressing this request, other than to state that if the court is concerned with potential burdens associated with mass discovery, it is within the court's discretion to "create a trial management plan with trial groups and/or phased bellwether trials, and narrow the scope of discovery to discrete groups."  (Rec. Doc. 187-1, pp. 8-9).  To the extent such a case management plan becomes necessary later in these proceedings, the court will consider same at the request of a party and with sufficient briefing to support and explain the option they think most appropriate here.

### III.   CONCLUSION

---

[20] This case is significantly less complex than *Acuna*, where over 1600 plaintiffs were suing over 100 defendants for alleged injuries occurring over a 40 year span.  *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

For the reasons set forth herein the Second Motion for Leave of Court to File Third

Supplemental and Amending Complaint (Rec. Doc. 167) and the Motion to Intervene (Rec. Doc.

166) are <u>GRANTED</u>.

Signed in Baton Rouge, Louisiana, on March 22, 2016.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**