UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **TONGA NOLAN, ET AL.** | **CASE NO. 3:13-cv-00439-JJB-EWD** |
| VS. | JUDGE JAMES J. BRADY |
| **EXXON MOBIL CORPORATION, ET AL.** | MAGISTRATE JUDGE ERIN WILDER-DOOMES |

**STATUS REPORT**

**A.    JURISDICTION**

This Honorable Court is vested with jurisdiction by virtue of 28 U.S.C. §1332.

**B.    BRIEF EXPLANATION OF THE CASE**

   **1.    Plaintiffs' claim:**

Plaintiffs allege that, as a result of the operations and willful, wanton and/or negligent actions and/or inactions of Defendants, Plaintiffs have been exposed to hazardous and toxic materials from the ExxonMobil facilities in Baton Rouge, Louisiana and that their persons and property have been damaged as a result of this exposure, and their use and enjoyment of their property has been unreasonably interfered with, constituting a private nuisance under La. Civ. Code. arts. 667-668.

Plaintiffs allege Defendants have failed to inspect and properly maintain the facilities which resulted in deficiencies that put the surrounding neighborhoods at risk for continued exposure to particulate matter, hydrogen sulfide, VOCs and other hazardous substances. The facilities in Baton Rouge routinely release toxic and/or hazardous substances and expose Plaintiffs and their property to unhealthy pollutants and noxious odors.

1

Defendants' operational failures caused the accidental released dangerous pollutants 145 times during the period of June 14, 2012 through 2013, an average of more than 1.5 times per week, according to their own reports. These reported accidents are in addition to the already excessive continuous emissions permitted under any permits and are outside the emissions permitted by law. As a result, Plaintiffs allege that they are routinely exposed to unsafe levels of particulate matter, hydrogen sulfide, VOCs and other hazardous substances from the Facility and have suffered damages as a result. These damages include persistent nuisance health effects and noxious odors, loss of use and enjoyment of property, mental anguish, and increased health risks. Plaintiff and expert testimony at the class certification hearing have already demonstrated that Plaintiffs' complaints have merit.

In addition to the ongoing tort and nuisance claims from the release of pollutants, Plaintiffs also specifically allege that they have suffered damages as a result of the episodic releases of June 14, 2012 naptha release at the ExxonMobil facilities, as well as the November 30, 2012 flaring event, and the May 23-25, 2013 incineration event. The nature and extent of these episodic releases will be further addressed in forthcoming merits discovery.

2. **Defendant's claim:**

Defendants deny any and all allegations of negligence or wrongdoing contained in Plaintiffs' and Intervenors' claims, the supplemental and amended complaints, and the Intervention Complaint. Defendants deny any of the alleged conduct constituted a private nuisance, deny Plaintiffs[1] were exposed to hazardous or toxic materials attributable to Defendants, deny Plaintiffs were injured or incurred property damage as a result of any

---

[1] The original plaintiffs, subsequently joined plaintiffs, and intervenors are collectively referred to herein as "Plaintiff" and "Plaintiffs."

alleged exposure to 'materials' attributable to Defendants, and deny any and all liability to Plaintiffs.

As uncontroverted evidence and expert testimony have already demonstrated, none of the alleged specific releases complained of – much less the alleged generic ongoing releases – had *any* impact on any individual Plaintiff or their property. Because class certification has been denied, each individual Plaintiff bears the burden of proving duty, breach, cause-in-fact, proximate causation, and damages as to each of their individual claims. As no Plaintiff can meet that burden, Defendants are entitled to judgment in their favor.

### 3. Intervenor's Claim:

The Facility was initially constructed in 1909 by Standard Oil Company of Louisiana on 225 acres and initially processed 1,800 barrels of oil daily.

The Facility is now owned by ExxonMobil and has expanded and grown significantly to become the second largest refinery in the United States. At present, the Facility occupies approximately 2,100 acres near the Standard Heights community and processes 502,000 barrels of crude oil daily.

The Facility manufactures over 300 products, including motor gasoline, jet fuel, aviation gasoline, lubricating oils, waxes, petroleum coke, liquefied petroleum gas, and chemical feedstock.

**JUNE 14, 2012 RELEASE**

On or about June 14, 2012, the bleeder plug of Tank 801 at the Facility's Aromatics Production Unit began leaking steam cracked naptha, which according to its MSDS, contains

benzene, toluene, cyclohexane, hexane and other volatile organic compounds ("VOCs"). The leak is estimated to have begun at 1:54 a.m.

After discovering the leak around 4:35 a.m., Defendants reported to authorities that there had been a release of benzene "greater than 10 pounds." ExxonMobil and its agent, Derek Reese, did not provide authorities or Plaintiffs with an accurate measurement of the released substances and downplayed the severity of the release, reporting that it was not an "emergency condition."

Defendants did not alert the public or Plaintiffs of the release of the hazardous substances or provide warnings related to the possible health effects.

At about 12:30 p.m. on June 14, ExxonMobil and Derek Reese became aware that 411 barrels had been released during the leak, but did not report their estimate of the size of the release to authorities for more than two days.

On June 15, at 3:30 p.m., Defendants notified authorities that 1,364 pounds of benzene had been released, a fraction of their later estimate. On June 16, at 4:30 p.m, a full 52 hours after becoming aware of the true size of the spill, Defendants finally reported to authorities that 411 barrels had been released.

On June 15, 2012, Plaintiffs noted multiple dead birds on the plant site. There had been no warning. An Exxon employee came over and took air samples on their plant and never disclosed why.

The release took place right on the other side of the railroad spur, in the coker unit. Their plant is just on the other side of the fence. Entergy LA Station on the day of the incident who after inhaling fumes suffered from constant headaches for a week.

ExxonMobil was later issued a civil penalty by the Louisiana Department of Environmental Quality ("LDEQ") for withholding notification for 52 hours on the grounds that "the failure to immediately notify the hotline of the severity and change in the nature of the release prevented multiple agencies from providing a revised response to provide protection to human health and the environment from the risk of an explosion and/or off-site impact."[2] The LDEQ also determined the release to be an "emergency condition,"[3] a "condition which could reasonably be expected to endanger the health and safety of the public, cause significant adverse impact to the land, water or air environment, or cause severe damage to property."

On July 20, 2012, J. Derek Reese stated that during the June 14, 2012 release, the Facility had released 28,688 pounds of Benzene, 10,882 pounds of Toluene, 1,100 pounds of Cyclohexane, 1,564 pounds of Hexane, and 12,605 pounds of other Volatile Organic Compounds, or VOCs, without authorization.

In the August 14, 2012 follow-up letter written by J. Derek Reese, Defendants admitted that the pollutants emitted as a result of the June 14, 2012 release were even greater than previously reported. In this letter, Defendants stated that over 31,000 pounds of Benzene, 13,000 pounds of Toluene, 1,400 pounds of Cyclohexane, 2,500 pounds of Hexane, and 14,000 pounds of other VOCs.

The amount of each pollutant emitted during this single release was greater than the amount the Facility was permitted to emit for the entire year.

---

[2] August 23, 2013 Penalty Assessment (Enforcement Tracking No. AE-P-13-00479).
[3] *Id*.

**C.	PENDING MOTIONS**

List any pending motion(s), the date filed, and the basis of the motion(s):

There are no pending motions at this time.

**D.	ISSUES**

List the principal legal issues involved and indicate whether or not any of those issues are in dispute:

The parties identify the following legal issues that are in dispute at this time. Additional legal issues may be identified as this action proceeds.

**Legal Issues Identified by Plaintiffs:**

1. Whether Defendants' actions and inactions have resulted in an unreasonable interference with Plaintiffs' use of their property, constituting a private nuisance, thus rendering them liable to Plaintiffs under La. Civ. Code. arts. 667-668.

2. Whether Defendants' activities amount to a continuing nuisance.

3. Whether Defendants' acts and omissions in their operations and maintenance of the Facility constitute negligence, which caused Plaintiffs' various damages.

4. Whether Defendants failed to warn Plaintiffs that its releases may be hazardous to human health and the environment.

5. Whether Defendants are liable under La. Civ. Code art. 2317, due to the ruin, vice or defect of things in the custody and control of the defendants.

**Legal Issues Identified by Defendants:**

1. Whether each individual Plaintiff proves Defendants breached a duty owed to that Plaintiff.

6

2. Whether each individual Plaintiff establishes that he or she was exposed to a specific agent as a result of any emission legally attributable to Defendants.

3. Whether each individual Plaintiff proves the alleged emission to which he/she was allegedly exposed was the cause in fact of any compensable injury or damage.

4. Whether each individual Plaintiff proves the alleged emission to which he/she was allegedly exposed was the proximate cause of any compensable injury or damage.

5. Whether each individual Plaintiff can proffer admissible expert evidence on all applicable scientific and technical elements of their claim (including duty, breach, exposure, cause-in-fact, proximate causation, damages, and elimination of alternative causation and etiologies) sufficient to satisfy the requirements of the Federal Rules of Evidence and *Daubert*.

6. Whether each individual Plaintiff has been damaged.

7. Whether each individual Plaintiff suffered "only an inconvenience, but not a real damage." La. C.C. Art. 668.

8. Whether Defendants are entitled to judgment as a matter of law on some or all of Plaintiffs' claims.

9. Defendants' affirmative defenses.

E.  **DAMAGES**

Separately, for each party who claims damages or an offset, set forth the computation of damages or the offset:

1. Plaintiff's calculation of damages: Plaintiffs have identified the following pertinent cases in their ongoing quantum studies:

$35,000 per individual- *Watters v. Dep't of Soc. Servs.*, 2011-1174 (La. App. 4 Cir. 3/14/12), 102 So. 3d 118 writ denied, 2012-1146 (La. 9/14/12), 99 So. 3d 32 (*persistent headaches, sore throats, itching, allergies, stress, and respiratory irritation due to mold in building. Awarded $25,000 in general damages and $10,000 in mental anguish.*)

$20,000 per individual for one month period- *Jones v. Capitol Enterprises, Inc.*, 2011-0956 (La. App. 4 Cir. 5/9/12), 89 So. 3d 474. (*sandblasting of nearby water tower over one month period caused plaintiffs to be exposed to/inhale silica and experience health issues such as sinus problems, eye & respiratory irritation, and headaches as well as property damage and inconvenience/nuisance. None of the plfs sought medical treatment, but complained of annoyance and feeling sick. Each plf awarded lump sum of $20,000 for physical pain & suffering, mental anguish, nuisance, and property damage.*)

$10,000 - $50,000, depending on level of symptoms: *Anthony v. Georgia Gulf Lake Charles, LLC*, 2013-236 (La. App. 3 Cir. 5/21/14), 146 So. 3d 235 writ denied, 2014-2102 (La. 11/26/14), 153 So. 3d 425. (*suits filed against chemical manufacturing facility by neighboring residents arising out of explosion and fire at facility that dispersed highly toxic mix of chemicals into air. Residents were awarded damages after trial for nuisance (including symptoms such as headaches, sinus problems, nausea, eye/throat irritation, dizziness, fatigue, loss of smell/taste, respiratory issues) and mental anguish (anxiety, fear of*

*disease/cancer) in the range of $10,000 to $50,000 according to their level of symptoms.)*

2. Defendants' calculation of offset and/or plaintiff's damage: Defendants deny liability to any Plaintiff and therefore calculate each Plaintiff's damages as $0. Defendants do not claim any offset at this time, but reserve the right to do so in the future.

3. Counterclaimant/cross claimant/third party's calculation of damages: Defendants do not assert any counterclaims or claim any damages at this time, but reserve the right to assert a claim for damages (including attorneys' fees) in the future.

F.  SERVICE

Identify any unresolved issues as to waiver or service of process, personal jurisdiction, or venue: None.

G.  DISCOVERY

1. Have the initial disclosures required under FRCP 26(a)(1) been completed?

[ ] YES [X] NO

a. Do any parties object to initial disclosures?

[ ] YES [X] NO

Defendants suggest a deadline of September 23, 2016 for each party to serve initial disclosures on all opposing parties.

For any party who answered *yes,* please explain your reasons for objecting:

b. Please provide any stipulations reached by the parties with regard to FRCP 26(a)(1) initial disclosures.

9

2. Briefly describe any discovery that has been completed or is in progress:

**Plaintiffs State:**

Plaintiffs were served with discovery on May 23, 2016 by mail. The Court granted an extension to answer this discovery by August 5. Plaintiffs provided initial responses and objections to Defendants on June 20, 2016. As part of these responses, Plaintiffs disclosed preliminary medical provider information, and are in the process of updating and disclosing this information. This discovery consisted of 257 sets of individual discovery and Defendants requested that the responses be verified by individual plaintiffs. This is a herculean task and Plaintiffs will likely require an additional extension to fully comply. However, Plaintiffs intend to provide responses to the discovery by August 5, 2016. Responding to many of Defendants' discovery requests will require the review of Plaintiffs' medical records which have not yet been acquired, thus many Plaintiffs responses will need to be supplemented after the necessary review. Defendants have provided HIPAA forms for the disclosed providers in order to begin the process of requesting medical records, which Plaintiffs are signing and returning on a rolling basis. Additionally, Plaintiffs are in the process of gathering responsive information and updating the medical provider information provided, and will be supplementing their initial responses in the near future.  Plaintiffs issued their first liability discovery to Defendants on June 9, 2016 and recently received Defendants' responses and proposed protective order, which they are reviewing.

**Defendants State:**

Defendants propounded basic written discovery on all Plaintiffs (original, joining, and intervening) to this lawsuit. Defendants received original and joining Plaintiffs purported initial responses and objections on June 20, 2016. Said responses were deficient because, among other reasons, they failed to provide responses on behalf of each individual Plaintiff, were not executed, where appropriate, by the individual Plaintiffs, and were otherwise incomplete and non-responsive. However, the Court subsequently granted Plaintiffs a 45-day extension to respond to Defendants' written discovery requests. Plaintiffs now indicate herein an inability to respond to basic discovery, despite having 75 days in which to do so. Plaintiffs voluntarily moved to join over 200 additional plaintiffs in this case and now seem incapable of complying with the basic discovery requirements set forth by the Federal Rules. Defendants are not imposing a herculean task upon Plaintiffs by merely propounding written discovery and requesting Plaintiffs comply with the Federal Rule of Civil Procedure 33(b)(5) by providing substantive responses verified by each plaintiff. Plaintiffs' admitted inability to conduct traditional discovery highlights the need for the Court to enter a *Lone Pine* order.

During the class certification stage, the parties engaged in extensive written and deposition discovery leading up to the hearing on class certification. Although that discovery occurred during the attempted class certification phase of this lawsuit, much of the discovery is also relevant to the merits of Plaintiffs' claims and Defendants' defenses. Discovery conducted includes voluminous document production by Defendants, interrogatory responses, depositions of Defendants' corporate

representatives and employees, and expert discovery regarding air modeling and toxicology. Accordingly, remaining discovery will focus primarily on each Plaintiff's individual claims.

Plaintiffs propounded written discovery on Defendants, the vast majority of which was redundant of discovery propounded and responded to during the class certification phase of this lawsuit. Defendants timely responded to written discovery propounded by original and joining Plaintiffs and are in the process of timely responding to written discovery propounded by intervening Plaintiffs. Defendants have submitted a proposed protective order to counsel for all Plaintiffs and will produce further documents once the protective order is agreed upon by the parties and entered by the Court.

3. Please describe any protective orders or other limitations on discovery that may be required/sought during the course of discovery. (For example: are there any confidential business records or medical records that will be sought? Will information that is otherwise privileged be at issue?)

Discovery will involve confidential, proprietary and otherwise sensitive business records of Defendants and medical records of Plaintiffs. Accordingly, Defendants have submitted a proposed protective order to counsel for all Plaintiffs. Once the terms of a protective order are agreed upon by the parties, the parties anticipate submitting a consent protective order for the Court's consideration.

4. Discovery from experts:

Identify the subject matter(s) as to which expert testimony will be offered:

**By Plaintiffs:** Air modeling, air monitoring, emissions, toxicology, epidemiology, and refinery and petrochemical plant operations. Plaintiffs have not made a final determination at this time regarding all subject matters for which they will offer expert testimony.

**By Defendants:** Air modeling, environmental sampling, air monitoring, epidemiology, toxicology, chemistry, refinery and petrochemical plant operations, emissions, medicine, medical causation, damages, and applicable standards of care. Defendants have not made a final determination at this time regarding all subject matters for which they may or will offer expert testimony.

H.  **PROPOSED SCHEDULING ORDER**

**Plaintiffs' Statement:**

There has been no mutual agreement among the Parties regarding any scheduling orders. Plaintiffs respectfully suggest that a scheduling order can be most meaningfully addressed after a discussion of pretrial discovery groupings and bellwether trial groups with the Court and the Parties at the scheduling conference. Additionally, Plaintiffs are opposed to the use of a *Lone Pine* order in this case. Thus, Plaintiffs assert that the setting of deadlines at this point is premature.

**Defendants' Statement:**

Defendants respectfully suggest that discussion of "discovery groupings" and "bellwether trial groups" is unnecessary at this time. Defendants have produced voluminous documents and been the subject of numerous depositions regarding issues relevant to the merits of Plaintiffs'

claims. Consequently, the bulk of any remaining discovery should focus on each Plaintiff's individual claims. Defendants have propounded individual discovery on each Plaintiff in this litigation – discovery as to all Plaintiffs is underway and "discovery groupings" are unnecessary. Based on Plaintiffs' initial responses, and Plaintiffs' suggestion herein that they will be unable to provide substantive discovery responses by the Court extended deadline, Defendants anticipate many, if not all, Plaintiffs' responses will be either nonexistent or deficient. Defendants will meet and confer with Plaintiffs in good faith to resolve any discovery disputes. However, to the extent discovery responses remain deficient or indicate individual Plaintiffs cannot meet their burden of producing evidence of each element of their claims, Defendants anticipate filing dispositive motions on a rolling basis throughout the fact discovery period. Additionally, as indicated by Plaintiffs' admission that they will be unable to comply with the Court mandated discovery response deadline, traditional discovery is proving unsuited for this mass action, and Defendants reiterate their request for a *Lone Pine* Order requiring Plaintiffs to produce certain affirmative evidence in support of their individual claims. Defendants anticipate that many Plaintiffs' ultimate inability to produce evidence in support of their individual claims (either through discovery or in response to a *Lone Pine* Order) will subject their claims to dismissal, thus considerably narrowing the need for additional adjudication and trial. Thus, Defendants suggest that this Court adopt the deadlines below for discovery and motions practice and refrain from setting additional case management deadlines, including trial settings, until after said discovery and motions practice have had the opportunity to narrow the issues and parties.

1. **Initial disclosure deadline:** September 23, 2016.
2. **Recommended deadlines for completion of fact discovery:** August 15, 2017.
3. **Filing all discovery motions regarding Plaintiffs' individual claims:** September 15, 2017.
4. **Plaintiffs' expert disclosures and reports due:** October 15, 2017.
5. **Defendants' expert disclosures and reports due:** January 15, 2018.
6. **Rebuttal expert disclosures and reports due:** February 15, 2018.
7. **Completion of expert discovery:** April 15, 2018.
8. **Additional case management dates and deadlines to be set following completion of discovery.**

I. TRIAL

1. Has a demand for trial by jury been made?

    [X] YES [ ] NO

    1. Estimate the number of days that trial will require.

        Plaintiffs do not currently have enough information to estimate the number of days that a trial will require.

J. OTHER MATTERS

Are there any specific problems the parties wish to address at the scheduling conference?

[X] YES [ ] NO

If the answer is *yes,* please explain:

Plaintiffs would like to address the potential for pretrial discovery groupings and trial groupings.

Case 3:13-cv-00439-JJB-EWD Document 211-1 07/26/16 Page 15 of 18

Defendants state that discussion of discovery groupings and trial groupings is unnecessary for the reasons stated in Section H, *supra*. Defendants highlight the need for a *Lone Pine* Order given Plaintiffs' admitted inability to comply with traditional discovery rules.

If the answer is *no,* do the parties want the court to cancel the scheduling conference and to enter a scheduling order based on the deadlines set out in this report? CHECK "NO" IF YOU HAVE NOT SUBMITTED PROPOSED DEADLINES.

[ ] YES [X] NO

**K.    SETTLEMENT**

1. Please set forth what efforts, if any, the parties have made to settle this case to date.
2. Do the parties wish to have a settlement conference:

[X] YES [X] NO

If your answer is *yes,* at what stage of litigation would a settlement conference be most beneficial?

**Plaintiffs' Statement:** Defendants' will have a substantial amount of data to evaluate Plaintiffs' claims following their review of Plaintiff's responses to recent Exxon's First Set of discovery. Therefore a settlement conference would be beneficial at that stage, before substantial time and resources are spent on a numerous Plaintiff depositions.

**Defendants' Statement:** Defendants anticipate filing dispositive motions on a rolling basis throughout the fact discovery phase, which we anticipate will eliminate many, if not all, of Plaintiffs' claims, rendering settlement discussions unnecessary and premature.

16

Defendants further note that Plaintiffs' counsel's statement that "Defendants' [sic] will have a substantial amount of data to evaluate Plaintiffs' claims following their review of Plaintiff's responses to recent Exxon's First Set of discovery" is at odds with their admission herein that they will be unable to provide substantive responses to the basic discovery despite having 75-days in which to do so. For all of these reasons, Defendants believe a settlement conference is unnecessary and premature.

**L.  CONSENT TO JURISDICTION BY A MAGISTRATE JUDGE**

You have the right to waive your right to proceed before a United States District Judge and may instead consent to proceed before a United States Magistrate Judge.

Indicate whether, at this time, all parties will agree, pursuant to 28 U.S.C. § 636(c), to have a Magistrate Judge handle all the remaining pretrial aspects of this case and preside over a jury or bench trial, with appeal lying to the United States Court of Appeals for the Fifth Circuit.

All parties agree to jurisdiction by a Magistrate Judge of this court:

[ ] YES [X] NO

**If your response was "yes" to the preceding question, all attorneys and unrepresented parties should sign the <u>attached form</u> to indicate your consent.**

Report dated: 7/26/2016:

<u>s/ Stephen H. Wussow</u><br>
Michael G. Stag, Bar No. 23314<br>
Ashley M. Liuzza, Bar No. 34645<br>
Stephen H. Wussow, Bar No. 35391<br>
Smith Stag, L.L.C.<br>
One Canal Place<br>
365 Canal Street, Suite 2850<br>
New Orleans, Louisiana 70130

17

Telephone:     (504) 593-9600
Facsimile:     (504) 593-9601
Email: mstag@smithstag.com
        aliuzza@smithstag.com
        swussow@smithstag.com

**ATTORNEYS FOR PLAINTIFFS**

*/s/ Angela M. Spivey*
Angela M. Spivey
*Admitted Pro Hac Vice*
Andrew G. Phillips
*Admitted Pro Hac Vice*
McGuireWoods LLP
1230 Peachtree Street, NE
Promenade, Suite 2100
Atlanta, Georgia  30309-3534
404.443.5500 (Telephone)
404.443.5599 (Facsimile)
aspivey@mcguirewoods.com
aphillips@mcguirewoods.com

*/s/ William D. Lamptom*
William D. Lamptom (#29940)
Jones Walker LLP
8555 United Plaza Boulevard, 5th Floor
Baton Rouge, Louisiana  70809
225.248.2000 (Telephone)
225.248.3094 (Facsimile)

Deborah Kuchler
Janika D. Polk
Kuchler Polk Schell Weiner & Richeson, LLC
1615 Poydras Street
Suite 1300
New Orleans, Louisiana  70112
504.592.0691 (Telephone)
504.592.0697 (Facsimile)
dkuchler@kuchlerpolk.com
jpolk@kuchlerpolk.com

**ATTORNEYS FOR DEFENDANTS**